LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GILBERTO GARCIA,
SANDRA HERAS,
DEJA WASHINGTON,
JOHEB HASSAN, and
MICHAEL MOSCHITTO,
*on behalf of themselves,*
*FLSA Collective Plaintiffs and the Class,*

                Plaintiffs,

                v.

ALTAMAREA GROUP, LLC,
MRMADISON LLC,
      d/b/a RISTORANTE MORINI,
AMG PARK LLC d/b/a VAUCLUSE,
ALTAMAREA LLC d/b/a MAREA,
JOHN DOE CORPORATIONS 1-10,
MICHAEL WHITE and
AHMASS FAKAHANY,

                Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiffs, GILBERTO GARCIA, SANDRA HERAS, DEJA WASHINGTON, JOHEB HASSAN, and MICHAEL MOSCHITTO (herein, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this class and collective action Complaint against Defendants, ALTAMAREA GROUP, LLC, MRMADISON

LLC d/b/a RISTORANTE MORINI, AMG PARK LLC d/b/a VAUCLUSE, ALTAMAREA LLC d/b/a MAREA, and JOHN DOE CORPORATIONS 1-10 (together the "Corporate Defendants"), MICHAEL WHITE and AHMASS FAKAHANY ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.    Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum wage and overtime due to invalid tip credit, (3) illegally retained gratuities, (4) liquidated damages, and (5) attorneys' fees and costs.

2.    Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid wages due to time shaving, (2) unpaid minimum wage and overtime due to invalid tip credit, (3) illegally retained gratuities, (4) unpaid spread of hours premium, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.    Plaintiff GILBERTO GARCIA is a resident of Bronx County, New York.

6.    Plaintiff SANDRA HERAS is a resident of Queens County, New York.

7.    Plaintiff DEJA WASHINGTON is a resident of Kings County, New York.

8.     Plaintiff JOHEB HASSAN is a resident of Middlesex County, New Jersey.

9.     Plaintiff MICHAEL MOSCHITTO is a resident of New York County, New York.

10.     Corporate Defendant ALTAMAREA GROUP, LLC owns and operates a restaurant enterprise at the following New York City locations with the following tradenames:

 a.  Ristorante Morini – 1167 Madison Avenue, New York, NY 10028;

 b.  Ai Fiori – 400 Fifth Avenue, 2nd Level, New York, NY 10018;

 c.  Vaucluse – 100 East 63rd Street, New York, NY 10065;

 d.  Marea – 240 Central Park South, New York, NY 10019;

 e.  Osteria Morini Soho – 218 Lafayette Street, New York, NY 10012; and

 f.  Nicoletta – 160 Second Avenue, New York, NY 10003 (together, the "Restaurants.").

Defendants own and operate a restaurant enterprise through "Altamarea Group." Specifically, the Restaurants are or were engaged in related activities, shared common ownership and had a common business purpose. The Restaurants are commonly owned through the common control of Individual Defendants MICHAEL WHITE and AHMASS FAKAHANY. According to Altamarea Group's webpage, Individual Defendants "shared a vision to create restaurant brands that are distinct in concept but united in delivering unsurpassed quality and outstanding service . . . [and] [a]lthough Ahmass and Michael seem to somehow be in every restaurant at all times, they rely on a vast team of talented people who share their vision around client service, culinary consistency and quality, and operating excellence." *See* **EXHIBIT A**. Defendants recruit for the Restaurants through a common webpage on their "Altamarea Group" website, at https://harri.com/altamareagroup, which lists available employment at all of their locations. *See*

**EXHIBIT B**. Defendants also jointly advertise their Restaurants on their webpage. *See* **EXHIBIT C**. In addition, some employees work interchangeably between the Restaurants.

11.    Defendants operate the Restaurants through the following Corporate Defendants:

(a) Corporate Defendant ALTAMAREA GROUP, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 611 Broadway, Suite 415, New York, NY 10012. Individual Defendants are the owners of ALTAMAREA GROUP, LLC.

(b) Corporate Defendant MRMADISON LLC d/b/a RISTORANTE MORINI is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1167 Madison Avenue, New York, NY 10028 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Ristorante Morini through Corporate Defendant MRMADISON LLC d/b/a RISTORANTE MORINI. Individual Defendants are the owners of MRMADISION LLC d/b/a RISTORANTE MORINI.

(c) Corporate Defendant AMG PARK LLC d/b/a VAUCLUSE is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 100 East 63rd Street, New York, NY 10065 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Vaucluse through Corporate Defendant AMG PARK LLC d/b/a VAUCLUSE. Individual Defendants are the owners of AMG PARK LLC d/b/a VAUCLUSE.

(d) Corporate Defendant ALTAMAREA LLC d/b/a MAREA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of

business located at 240 Central Park South, New York, NY 10019 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Marea through Corporate Defendant ALTAMAREA LLC d/b/a MAREA. Individual Defendants are the owners of ALTAMAREA LLC d/b/a MAREA.

(e) Corporate Defendants JOHN DOE CORPORATIONS 1-10 are various business corporations doing business as one of the Restaurants throughout New York State, which employ FLSA Collective Plaintiffs and Class Members under a common wage and hour policy. Individual Defendants are the owners of JOHN DOE CORPORATIONS 1-10.

12.    Individual Defendants:

(a) Individual Defendant MICHAEL WHITE is an owner of Corporate Defendants ALTAMAREA GROUP LLC, MRMADISON LLC d/b/a RISTORANTE MORINI, AMG PARK LLC d/b/a VAUCLUSE, ALTAMAREA LLC d/b/a MAREA, and JOHN DOE CORPORATIONS 1-10. MICHAEL WHITE exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to MICHAEL WHITE regarding any of the terms of their employment, and MICHAEL WHITE would have the authority to effect any changes to the quality and terms of employees' employment. MICHAEL WHITE ensured that employees effectively serve customers and that the business is operating efficiently and profitably. MICHAEL WHITE exercised functional control over the business and financial operations of all Corporate Defendants. MICHAEL WHITE had the power and authority to

supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(b) Individual Defendant AHMASS FAKAHANY is an owner and chief executive officer of Corporate Defendants ALTAMAREA GROUP LLC, MRMADISON LLC d/b/a RISTORANTE MORINI, AMG PARK LLC d/b/a VAUCLUSE, ALTAMAREA LLC d/b/a MAREA, and JOHN DOE CORPORATIONS 1-10. AHMASS FAKAHANY exercised control over the terms and conditions of Plaintiffs' employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiffs, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to AHMASS FAKAHANY regarding any of the terms of their employment, and AHMASS FAKAHANY would have the authority to effect any changes to the quality and terms of employees' employment. AHMASS FAKAHANY ensured that employees effectively serve customers and that the business is operating efficiently and profitably. AHMASS FAKAHANY exercised functional control over the business and financial operations of all Corporate Defendants. AHMASS FAKAHANY had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs and Class members and could reprimand employees.

13.    At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

14.    At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.  Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including servers, bussers, food runners, baristas, food preparers, cooks, bartenders, and barbacks, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

16.  At all relevant times, Plaintiffs and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages due to time shaving. A subclass of tipped employees has a claim for unpaid minimum wage and overtime, including those from an improperly deducted tip credit, and a claim for illegally retained tips. The claims of Plaintiffs stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

17.  The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18.  Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including servers, bussers, food

runners, baristas, food preparers, cooks, bartenders, and barbacks, among others) employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.   All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.   The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs GARCIA, HERAS, WASHINGTON, and HASSAN are members of both the Class and the Tipped Subclass.

21.   Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay wages due to time-shaving, (ii) failing to pay spread of hours premium, (iii) failing to provide Class members with proper wage statements with every payment of wages, and (iv) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law.

22.    With regard to Plaintiffs GARCIA, HERAS, WASHINGTON, HASSAN, and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiffs and the Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

23.    Plaintiffs GARCIA and HERAS claim that Defendants illegally retained gratuities because they were subject to a tip pooling scheme where managers Guillermo Martinez and Alessandro Piliego participated in the tip pool. Similarly, Plaintiff WASHINGTON claims that Defendants illegally retained gratuities because she was subject to a tip pooling scheme where managers Michael Longshore and Richard Anderson participated in the tip pool. Similarly, Plaintiff HASSAN claims that Defendants illegally retained gratuities because he was subject to a tip pooling scheme where managers Francisco "Last Name Unknown," Michael "Last Name Unknown," Richard "Last Name Unknown," and Victor "Last Name Unknown" participated in the tip pool. Guillermo Martinez, Alessandro Piliego, Michael Longshore, Richard Anderson, Francisco "Last Name Unknown," Michael "Last Name Unknown," Richard "Last Name Unknown," and "Victor "Last Name Unknown," are managers because they hire and fire, set

schedules, open and close the restaurant, count money in the cash registry, and they track and divide the tips. As managers, they are also paid on a salary basis, not compensated at the tipped minimum wage rate, and they do not serve customers.

24.    With regard to a subclass of non-exempt tipped employees employed by Defendants, Defendants retained and failed to remit the tips earned by "Food Service Employees" for deliveries. Food Service Employees are those in positions such as servers, bussers, and food runners.

25.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

26.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

27.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

28.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

29.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

     a.    Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and the Class members;

c.  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiffs and the Class members for their work;

d.  Whether Defendants properly notified Plaintiffs and the Class members of their hourly rates and overtime rates;

e.  Whether Defendants paid Plaintiffs and Class members the proper overtime compensation under the New York Labor Law;

f.  Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g.  Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h.  Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j.  Whether Defendants established an invalid tip pooling arrangement by illegally including managers in the tip pool;

k.  Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiffs and the Tipped Subclass did not agree to;

l.    Whether Defendants retained any portion of the gratuities for their tipped employees;

m.    Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

n.    Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law;

o.    Whether Defendants paid Plaintiffs and Class members the proper wage for all hours worked;

p.    Whether Defendants properly compensated Plaintiffs and Class members their proper overtime under state law; and

q.    Whether Defendants paid Plaintiffs and Class members the New York State "spread of hours" premium when their workdays exceeded ten hours.

## **STATEMENT OF FACTS**

30.    Plaintiff GILBERTO GARCIA:

(a) In or about August 2016, Plaintiff GARCIA was hired by Defendants to work as a food runner at Defendants' Ristorante Morini restaurant, located at 1167 Madison Avenue, New York, NY 10028. Plaintiff GARCIA worked for Defendants until on or about April 2, 2017.

(b) From the start of Plaintiff GARCIA's employment with Defendants, Plaintiff GARCIA was regularly scheduled to work forty-six and a half (46.5) hours per week from 3:30pm to 11pm three days a week and from 10am to 10pm twice a week. In or around 2017,

Plaintiff GARCIA was regularly scheduled to work approximately thirty (30) to forty (40) hours. Plaintiff GARCIA was regularly required to work without any breaks even though Defendants automatically deducted a thirty (30) minute break for each workday, resulting in unpaid wages due to Defendants' time shaving policy.

(c) Throughout Plaintiff GARCIA's employment, Defendants paid Plaintiff below the New York State minimum wage. Specifically, throughout Plaintiff GARCIA's employment with Defendants, Plaintiff was paid an hourly rate of $7.50 per hour, for all hours worked up to forty (40) hours per week.

(d) Throughout Plaintiff GARCIA's employment with Defendants, Defendants paid Plaintiff GARCIA at an improper overtime rate due to an improper tip credit. At all relevant periods, Defendants compensated Plaintiff GARCIA at a rate of approximately $10.50 to $11.50 per hour for his overtime hours worked, which is less than the statutory amount permissible.

31.    Plaintiff SANDRA HERAS:

(a) In or about December 2014, Plaintiff HERAS was hired by Defendants to work as a busser at Defendants' Ristorante Morini restaurant, located at 1167 Madison Avenue, New York, NY 10028. Plaintiff HERAS worked for Defendants until on or about April 24, 2017.

(b) From the start of her employment with Defendants until in or around May 2016, Plaintiff HERAS was regularly scheduled to work fifty-six (56) hours per week from 4:00pm to 11:30pm from Tuesdays through Fridays and from 10:00am to 10:30pm on Saturdays and Sundays. From in or around May 2016, Plaintiff HERAS was regularly scheduled to work thirty (30) hours per week from 4:00pm to 11:30pm from Tuesdays through Fridays. Plaintiff HERAS was regularly required to work without any breaks even though Defendants automatically

14

deducted a thirty (30) minute break for each workday, resulting in unpaid wages due to Defendants' time shaving policy.

(c) From the start of her employment with Defendants until in or around January 2016, Plaintiff HERAS was paid below the New York State and federal minimum wage. Specifically, Plaintiff HERAS was paid an hourly rate of $5.25 per hour, for all hours worked up to forty (40) hours per week. From in or around January 2016 until the end of her employment, Plaintiff HERAS was paid below the New York State minimum wage at an hourly rate of $7.50 per hour, for all hours worked up to forty (40) hours per week. At all times, Plaintiff HERAS was a tipped employee.

(d) From the start of Plaintiff HERAS's employment until in or around May 2016, Defendants paid Plaintiff HERAS at an improper overtime rate due to an improper tip credit. At all relevant periods, Defendants compensated Plaintiff HERAS at a rate of approximately $8.25 to $9.50 per hour for her overtime hours worked, which is less than the statutory amount permissible.

32.    Plaintiff DEJA WASHINGTON:

(a) In or about July 2015, Plaintiff WASHINGTON was hired by Defendants to work as a barista at Defendants' Vaucluse restaurant, located at 100 East 63rd Street, New York, NY 10065. From July 2015 until the opening of Defendants' Vaucluse restaurant in or around September 2015, Plaintiff WASHINGTON attended training to work at Defendants' restaurants, including training to familiarize herself with the menu. Starting in or around February 2016, Plaintiff WASHINGTON was working for Defendants as both a hostess and barista. From in or around February 2016 until the end of Plaintiff WASHINGTON's employment with Defendants,

Plaintiff was unaware of Defendants' compensation structure for her dual position. Plaintiff WASHINGTON worked for Defendants until in or around April 2016.

(b) During Plaintiff WASHINGTON's training period, from in or around July 2015 until in or around September 2015, Plaintiff was regularly scheduled to work forty (40) hours per week from 9:00am to 5:00pm for five (5) days a week. Throughout this period, Plaintiff WASHINGTON was compensated at a rate of $7.00 per hour, which was below the statutory New York State and federal minimum wage rate.

(c) From in or around September 2015, Plaintiff WASHINGTON was regularly scheduled to work forty-two and a half (42.5) hours per week from 5:30pm to 12:30am for four (4) days a week and from 11:00am to 12:30am for one (1) day a week. Plaintiff WASHINGTON was regularly required to work without any breaks even though Defendants automatically deducted a thirty (30) minute break for each workday, resulting in unpaid wages due to Defendants' time shaving policy.

(d) From in or around September 2015 until in or around January 2016, Plaintiff WASHINGTON was paid below the New York State and federal minimum wage as a barista. Specifically, Plaintiff WASHINGTON was paid an hourly rate of $5.00 per hour, for all hours worked up to forty (40) hours per week. From in or around January 2016, Plaintiff WASHINGTON was paid below the New York State minimum wage at an hourly rate of $7.50 per hour, for all hours worked. At all relevant times, Plaintiff WASHINGTON was a tipped employee. From in or around February 2016, when Plaintiff worked as a hostess, she was paid at a rate of $15.00 per hour.

(e) Throughout Plaintiff WASHINGTON's employment with Defendants, Defendants paid Plaintiff WASHINGTON at an improper overtime rate due to an improper tip credit. At all

16

relevant periods, Defendants compensated Plaintiff WASHINGTON at approximately $9.00 per hour for her overtime hours worked, which is less than the statutory amount permissible.

33.    Plaintiff JOHEB HASSAN:

(a) In or about October 2010, Plaintiff HASSAN was hired by Defendants to work as a food runner at Defendants' Marea restaurant, located at 240 Central Park South, New York, NY 10019. Plaintiff HASSAN worked for Defendants until on or about July 15, 2016. On at least one occasion, Plaintiff HASSAN was sent to Defendants' Osteria Morini restaurant, to deliver food.

(b) Throughout Plaintiff HASSAN's employment with Defendants, Plaintiff HASSAN was regularly scheduled to work fifty-seven and a half (57.5) hours per week from 2:30pm to 1:00am from Wednesdays through Saturdays and from 9:30am to 1:00am on Sundays. However, at all times, the manager, Sean "Last Name Unknown," adjusted Plaintiff's work hours to reflect only half of the actual number of hours that Plaintiff HASSAN worked in a given workweek. For example, instead of compensating Plaintiff HASSAN for the sixty hours that he regularly worked on a weekly basis, his wage statements and paychecks only reflected approximately thirty hours. Plaintiff HASSAN was also regularly required to work without any breaks even though Defendants automatically deducted a thirty (30) minute break for each workday, resulting in unpaid wages due to Defendants' time shaving policy.

(c) From the beginning of Plaintiff HASSAN's employment until in or around July 2015, Defendants paid Plaintiff at an hourly rate of $5.00 per hour, for all hours worked up to forty (40) hours per week. From in or around July 2015 until the end of Plaintiff HASSAN's employment with Defendants, Plaintiff HASSAN was paid an hourly rate of $7.50 per hour. Throughout Plaintiff HASSAN's employment with Defendants, Defendants failed to compensate

17

Plaintiff for any of his overtime hours worked due to Defendants' time-shaving policy. At all times, Plaintiff HASSAN was a tipped employee.

34.    Plaintiff MICHAEL MOSCHITTO:

(a) In or about July 2015, Plaintiff MOSCHITTO was hired by Defendants to work as a food preparer and cook at Defendants' Marea restaurant, located at 240 Central Park South, New York, NY 10019. Plaintiff MOSCHITTO worked for Defendants until in or around October 2015.

(b) Throughout Plaintiff MOSCHITTO's employment with Defendants, Plaintiff MOSCHITTO was regularly scheduled to work eighty-seven (87) hours per week from 10:30am to 1:00am for six (6) days a week. However, Plaintiff MOSCHITTO was instructed by Defendants' manager, Loren "Last Name Unknown," to clock-in only after it was 1:00pm. As a result, Plaintiff was not paid for at least two and a half (2.5) hours per workday, which amounted to at least fifteen (15) hours of unpaid hours worked per week. Plaintiff MOSCHITTO was also regularly required to work without any breaks even though Defendants automatically deducted a thirty (30) minute break for each workday, resulting in unpaid wages due to Defendants' time shaving policy.

(c) Throughout Plaintiff MOSCHITTO's employment, Plaintiff was paid an hourly rate of $12.50 per hour. At all times, Plaintiff MOSCHITTO was a member of the Class.

35.    Plaintiffs GARCIA, HERAS, WASHINGTON, and HASSAN, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs GARCIA, HERAS, WASHINGTON, and HASSAN, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i)

failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) illegally retained gratuities, (vii) implemented an invalid tip pooling because Defendants retained tips, (viii) implemented an invalid tip pooling by including managers, (ix) failed to accurately track daily tips earned or maintain records thereof, (x) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (xi) failed to provide a proper wage statement with every payment of wages informing Plaintiffs and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

36.    Plaintiffs GARCIA, HERAS, WASHINGTON, HASSAN, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass suffered from Defendants' retention of gratuities through Defendants' invalid tip pooling arrangement. Defendants implemented a policy at the Restaurants where Plaintiffs and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, wherein managers, including managers from Ristorante Morini, Guillermo Martinez and Alessandro Piliego, managers from Vaucluse, Michael Longshore, Richard Anderson, and managers from Marea, Francisco "Last Name Unknown," Michael "Last Name Unknown," Richard "Last Name Unknown," and Victor "Last Name Unknown" participated in the tip pool. All are managers as

they have the power to hire and fire, set schedules, open and close the restaurant, they are required to count money in the cash register, and they count and divide the tips. As managers, they are paid on a salary basis, and they do not serve customers. As a result, Defendants illegally retained tips through the tip pooling arrangement by retaining a portion of the tips to be distributed to Defendants' managers. Such improper tip pooling policy invalidates Defendants' tip credit allowance. Defendants also retained gratuities by failing to remit tips earned by Food Service Employees for making deliveries.

37.    Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were also required to engage more than 20% of their working time in non-tipped related activities, including unloading deliveries of supplies and ingredients, drying and polishing silverware, dishes and cups, cleaning windows, cleaning the restaurant, sweeping and mopping the restaurant, delivering food, and dishwashing. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for <u>all</u> hours worked by tipped employees.

38.    At all times, Plaintiffs, FLSA Collective Plaintiffs and the Class were automatically deducted thirty (30) minutes per workday for a break. During this break, Plaintiffs, FLSA Collective Plaintiffs and the Class were not allowed to leave the building. Moreover, when it was busy, they were required to work through their break even though they were clocked-out. Any of the managers were allowed to and would call all non-exempt employees to work through the break if the restaurant was busy. As such, Defendants failed to compensate Plaintiffs, FLSA Collective Plaintiffs and the Class for this work time.

39.    Plaintiffs and Class members regularly worked days that exceed ten hours in length, but Defendants unlawfully failed to pay Plaintiffs and Class members the spread of hours premium for workdays that exceeded ten hours in length.

40.    Defendants failed to provide Plaintiffs and the Class members with proper wage notices at hiring and annually thereafter. Plaintiffs did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

41.    Plaintiffs and Class members received wage statements that were not in compliance with the New York Labor Law. Defendants were required to provide itemized listings of deductions taken on a wage statement with every payment of wages. Defendants failed to satisfy the requirements under the NYLL because the wage statements did not clearly include tip credit allowance for each payment period. Plaintiffs and Class members also received fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiffs and Class members.

42.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage, and the proper overtime rate thereof for hours worked over forty (40) in a workweek, to Plaintiffs, FLSA Collective Plaintiffs and Class members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

43.    Defendants knowingly and willfully operated their business with a policy of not paying the New York State "spread of hours" premium to Plaintiff and Class members, in violation of the NYLL.

44.    Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked.

45.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

46.    Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

47.    Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

48.    Plaintiffs reallege and reaver Paragraphs 1 through 47 of this class and collective action Complaint as fully set forth herein.

49.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

50.    At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

51.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

52.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

53.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an illegal tip-pooling scheme in which management retained a portion of the tips and included managers in the tip pool.

54.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all overtime hours worked at the statutory rate of time and one-half, including overtime wages owed due to Defendants' policy of time-shaving.

55.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked due to Defendants' policy of time shaving

56.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

57.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

58.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

59.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, damages representing disgorgement of illegally retained tips, plus an equal amount as liquidated

damages.

60.    Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

61.    Plaintiffs reallege and reaver Paragraphs 1 through 60 of this class and collective action Complaint as fully set forth herein.

62.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

63.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked. Defendants were not entitled to claim any tip credits.

64.    Defendants willfully violated Plaintiffs and the Class members' rights by instituting an illegal tip-pooling scheme in which Class members were required to share tips with management. In doing so, Defendants willfully deprived Plaintiffs and Class members of their lawfully earned wages.

65.    At all relevant times, the Defendants had a policy and practice of refusing to pay Plaintiffs and Class members for all of their hours worked due to Defendants' policy of time shaving.

66.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay "spread of hours" premium to them for each workday that exceeded ten (10) or more hours.

67.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are

required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiffs and Class members.

68.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

69.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages, damages representing disgorgement of illegally retained tips, unpaid spread of hours premium, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.   An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to time shaving and an invalid tip credit;

d.   An award of unpaid "spread of hours" premium due under the New York Labor Law;

e.   An award equal to the amount of the improperly retained tips withheld by Defendants;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

h.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

i.   Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j.   Designation of this action as a class action pursuant to F.R.C.P. 23;

k.   Designation of Plaintiffs as Representatives of the Class; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.


Dated: December 20, 2017

                                     Respectfully submitted,

                         By:    */s/ C.K. Lee*
                                      C.K. Lee, Esq.

                                      LEE LITIGATION GROUP, PLLC
                                      C.K. Lee (CL 4086)
                                      Anne Seelig (AS 3976)
                                      30 East 39th Street, Second Floor
                                      New York, NY 10016
                                      Tel.: 212-465-1188
                                      Fax: 212-465-1181
                                      *Attorneys for Plaintiffs,*
                                      *FLSA Collective Plaintiffs and the Class*